UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID LESIEGE, ET AL.,            )
               Plaintiffs    )
                             )
                             )
             v.            )     Civil Action No. 09-30044-MAP
                             )
                             )
                             )
TOWN OF STURBRIDGE, ET AL.,       )
             Defendants    )

REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6) (Document No. 6)
September 11, 2009

NEIMAN, U.S.M.J.

      The Town of Sturbridge ("the Town"), the Sturbridge Police Department ("the Sturbridge PD") and Detective Mark Saloio ("Saloio") (together "the Sturbridge Defendants") seek dismissal under Fed. R. Civ. P. 12 (b)(6) of the claims brought against them by David and Dawn LeSiege, as parents and next friends of "EL," a minor ("Plaintiffs"). In their multi-pronged complaint, Plaintiffs purport to bring ten tort and civil rights-based causes of action against the Sturbridge Defendants stemming from incidents that occurred in the summer of 2007. Sixteen additional counts target four other defendants associated with the Tantasqua Regional School District (together "the Tantasqua Defendants"), all of whom have answered the complaint

      The Sturbridge Defendants' motion to dismiss has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that the motion be denied with respect to a negligence

claim targeting the Town (Count 23) and a negligent infliction of emotional distress claim targeting the Sturbridge PD (Count 20), but allowed with respect to the other eight claims (Counts 17, 18, 19, 21, 22, 24, 25 and 26).

I. BACKGROUND

The following facts come directly from Plaintiffs' complaint and are stated in a light most favorable to them.  *See Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  For present purposes those facts are assumed to be true.

On June 5, 2007, an officer from the West Brookfield Police Department was dispatched to the home of "SC," a minor, after his parents informed the police they had found marijuana and pills in his room.  (Compl. ¶ 23.)  SC told the officer that he had bought marijuana from EL, a peer, on two separate occasions at Tantasqua Regional High School and that he had also once bought pills from EL but had returned them.  (*Id.* ¶¶ 24-25.)  One bag with a "small amount of green leafy substance, believed to be marijuana," was removed from SC's home.  (*Id.* ¶ 26.)

On June 6, 2007, after the case was referred to Sturbridge PD, Saloio, a detective, went to the high school and spoke with administrators about the previous day's incident.  (*Id.* ¶ 27-28.)  Upon Saloio's arrival, SC and his father were summoned to the principal's office where SC provided a written statement to the effect that he had purchased marijuana and pills from EL.  (*Id.* ¶ 29.)  Thereafter, it appears, EL was called to the principal's office and informed that he was going to be charged with possession and distribution of Class B and D substances on school grounds.  (*Id.* ¶ 14.)  Throughout the conversation, EL denied any knowledge or involvement with drugs.  (*Id.* ¶ 18.)  After EL's parents were called and picked him up, they went directly to the

Sturbridge PD to speak with Saloio.  (*Id.* ¶¶ 15-17.)

Two days later, on June 8, 2007, Saloio applied for a criminal complaint charging EL with intent to distribute a counterfeit drug and two counts of distribution of a class D substance near a school zone.  (*Id.* ¶ 33.)  Included in the application, Plaintiffs assert, was "a summons report referencing pills and marijuana seized as evidence that did not exist."  (*Id.*)  Indeed, "no drugs have ever been seized from [EL]."  (*Id.*)  Furthermore, Plaintiffs assert, the seizure date listed by Saloio was "June 7, 2007," a date on which "EL had no contact, either verbal or physical, with any member of the Sturbridge police."  (*Id.*)

Two months later, on August 9, 2007, at a show cause hearing, Saloio testified that he charged EL with distribution of a counterfeit drug "on a hunch."  (*Id.* ¶¶ 37-38.)  As a consequence, that charge was dismissed, but the case was referred for trial on the other charges.  (*Id.* ¶ 38.)  Meanwhile, EL was suspended from school and Plaintiffs, in a letter they received from the school on June 14, 2007, were advised that an expulsion hearing would be held on August 27, 2007.  (*Id.* ¶¶ 31, 49.)  In a subsequent letter dated August 14, 2007, however, Plaintiffs were notified that the expulsion hearing would be delayed until the final adjudication of the criminal proceedings.  (*Id.* ¶ 50.)  At trial, the exact date of which is unclear, the remaining charges against EL were dismissed due to lack of evidence.  (*Id.* ¶ 39.)

On February 27, 2009, Plaintiffs filed their twenty-six count complaint in state court.  Defendants removed the case here on March 19, 2009, and the Sturbridge Defendants promptly filed their motion to dismiss the ten counts targeting them (Counts

17-26[1]).  In due course, the court heard oral argument.

The ten causes of action targeting one or more of the Sturbridge Defendants are hardly models of clarity.  Accordingly, at oral argument, the court, with the parties' acquiescence, identified them as follows:

> Count 17: an intentional-based civil rights claim targeting the Sturbridge PD as well as an apparent abuse-of-process claim targeting the Sturbridge PD;
>
> Count 18: a negligence-based civil rights claim targeting the Sturbridge PD;
>
> Count 19: an intentional infliction of emotional distress claim targeting the Sturbridge PD;
>
> Count 20: a negligent infliction of emotional distress claim targeting the Sturbridge PD;
>
> Count 21: a negligent failure to train claim targeting the Town and the Sturbridge PD;
>
> Count 22: a negligent failure to supervise claim targeting the Town and the Sturbridge PD;
>
> Count 23: a negligence claim targeting the Town;
>
> Count 24: a federal civil rights claim targeting the Town;
>
> Count 25: a state civil rights claim targeting the Town; and
>
> Count 26: a 42 U.S.C. § 1983 civil rights claim targeting Saloio.

(Compl. ¶¶ 90-109.)  This framework will outline the court's discussion below.

## II.  STANDARD OF REVIEW

The court, when considering a motion to dismiss pursuant to Fed. R. Civ. P.

---

[1] Although the complaint lists the counts with Roman numerals (often inaccurately), the court finds it easier to identify them by Arabic numbers.

12(b)(6), must accept a complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor.  *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir.), *cert. denied*, 129 S. Ct. 2763 (June 8, 2009).  While a complaint does not need "detailed factual allegations," a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Recently, the Supreme Court made clear that, under *Twombly*, only a complaint that states a plausible claim for relief, on its face, survives a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (May 18, 2009).  In *Iqbal*, the Court stated that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.  DISCUSSION

Although the Sturbridge Defendants seek dismissal of all ten causes of action against them, the court, as indicated, will recommend survival of two of the tort claims (Counts 20 and 23).  The court divides its discussion into two sections:  first, the civil rights claims (Counts 17, 18 and 24 through 26) and second, the tort claims (Counts 17 and 19 through 23).[2]

A. <u>The Civil Rights Claims</u>

There are several reasons why the civil rights claims targeting the Sturbridge Defendants (Counts 17, 18 and 24-26) ought to all be dismissed.  First and foremost,

---

[2] As indicated, Count 17 appears to raise both a civil rights claim as well as an abuse-of-process claim targeting the Sturbridge PD.  Accordingly, it is addressed in both sections of the court's discussion.

5

there is absolutely no mention in the complaint of what civil rights were allegedly deprived. (Indeed, Count 26 is the only one that even lists a possible right of action, 42 U.S.C. § 1983, and then only cursorily.) Plaintiffs' memorandum of law offers little further clarity; at best, it asserts only that "Saloio's conduct lead to the deprivation of EL's clearly established constitutional rights to liberty, property and due process" and that "[f]or these reasons, the [civil rights] claims against [the] Sturbridge [PD] and . . . Saloio . . . should be maintained." (Pls.' Opp.'n to Defs.' Mot. at 4.) Such deficiencies, in the court's estimation, are fatal. *See Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (noting, in light of *Twombly* and *Iqbal*, that courts confronting civil rights allegations "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement") (alterations and further quotation marks omitted).

To be sure, at oral argument, Plaintiffs insinuated two possible theories behind the civil rights claims targeting the Sturbridge Defendants: (1) that EL's right to pursue an education was deprived without due process of law because he was suspended and eventually expelled from school without a hearing; and (2) that Saloio denied EL due process of law when he "fabricated evidence" in his application for the criminal complaint. Yet even assuming that it was appropriate for Plaintiffs to develop these assertions on the fly at oral argument, neither theory has any traction.

First, with regard to EL's suspension and expulsion, it is true that the First Circuit, citing *Goss v. Lopez*, 419 U.S. 565, 574-75 (1975), has held "that a student's interest in pursuing an education is included within the fourteenth amendment's protection of liberty and property" and, "[h]ence, a student facing expulsion or suspension from a

public educational institution is entitled to the protections of due process." *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988.)  Plaintiffs, however, do not supply any case law or legal principles -- and the court is aware of none -- that would support claims against *the Sturbridge Defendants* for the *Tantasqua Defendants'* decision to suspend and expel EL without a hearing.  Needless to say, the court is reluctant to create such a theory out of whole cloth.

Plaintiffs' second theory -- that Saloio denied EL due process when he "fabricated evidence" in his application for the criminal complaint -- also falls short.  Again, Plaintiffs' failure to develop this theory at all, let alone cite any case law, justifies dismissal.  *See Maldonado*, 568 F.3d at 266.  *See also Sonoran Scanners, Inc. v. Perkinelmer, Inc.*, 590 F. Supp. 2d 196, 204 (D. Mass. 2008) ("As the First Circuit has repeatedly held, '[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).[3]  Perhaps more importantly, the Sturbridge Defendants make a compelling -- and completely unrebutted -- argument that Saloio is protected by qualified immunity since his alleged conduct could not have violated any clearly-established statutory or constitutional rights of which a reasonable police officer would have been aware.  *See Alfreedi v. Bennett*, 517 F. Supp. 2d 521, 538-39 (citing, *inter*

---

[3] In this regard, the court notes that it has found only one decision from this circuit mentioning a similar theory, but only in *dicta*.  *See Sietins v. Joseph*, 238 F. Supp. 2d 366, 377 (D. Mass. 2003) (in which the court "[a]ssum[ed], *arguendo*, [that] false statements in a criminal complaint application could form the basis for a section 1983 claim").

*alia*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  *See also id.* at 539 (noting that the Massachusetts Civil Rights Act "affords the same standards of qualified immunity for public officials as does 42 U.S.C. § 1983") (citing *Howcroft v. City of Peabody*, 747 N.E.2d 729, 746 (Mass. 2001)).

B.  Tort Claims

In the court's estimation, Plaintiffs fare a bit better with respect to the tort claims targeting the Town and the Sturbridge PD (Counts 17 and 19 through 23).  No tort claims are directed at Saloio.  In this regard, the court notes that, while the Massachusetts Torts Claims Act ("MTCA") was never specifically mentioned in the complaint, the Sturbridge Defendants have assumed that Plaintiffs intended to bring their tort claims under that statute and, at oral argument, Plaintiffs agreed with that assessment.  Accordingly, the court's remaining discussion revolves around the MTCA.

Section 2 of the MTCA states that "public employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office."  Mass. Gen. L. ch. 258, § 2.  The Sturbridge Defendants make two main arguments as to why section 2 does not apply here and, accordingly, why the tort claims should be dismissed:  (1) the Sturbridge PD and the Town are immune from liability pursuant to other sections of the MTCA; and (2) Plaintiffs' MTCA claims are not sufficiently pled.  The court addresses each argument in turn and, in the end, concludes that Count 23, the negligence claim targeting the Town, and Count 20, the negligent infliction of emotional distress claim targeting the Sturbridge PD, ought to survive, but that other tort claims against the Sturbridge Defendants should be dismissed.

1. MTCA Immunities

Section 10 of the MTCA provides public employers several alternative immunities from liability.  *See Willhauck v. Town of Mansfield*, 164 F. Supp. 2d 127, 140 (D. Mass. 2001).  Here, Saloio's employers -- the Town and the Sturbridge PD -- raise three such immunities with regard to the tort claims targeting them:  the intentional tort exception outlined in Mass Gen. L. ch. 258, § 10(c) ("section 10(c)"); the discretionary function exception outlined in Mass Gen. L. ch. 258, § 10(b) ("section 10(b)"); and a law enforcement immunity outlined in Mass Gen. L. ch. 258, § 10(h) ("section 10(h)").

The Town and the Sturbridge PD are clearly immune from the intentional tort claims targeting them -- *i.e.*, the abuse of process component of Count 17 and the intentional infliction of emotional claim in Count 19 -- inasmuch as section 10(c) specifically states that the MTCA does not apply to "any claim arising out of an intentional tort, including . . . intentional mental distress . . . and malicious abuse of process."  Mass. Gen. L. ch. 258, § 10(c).  Plaintiffs offer no argument to the contrary.  The court, however, believes that the negligence-based claims (Counts 20 through 23) survive the Sturbridge Defendants' immunity arguments.

The Sturbridge Defendants first contend that the negligence-based claims are barred by section 10(b), the discretionary function exception.  That provision provides immunity from MTCA claims that are "based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting withing the scope of his office or employment, whether or not the discretion involved is abused."  Mass. Gen. L. ch. 258, § 10(b).  In pursuing this immunity theory, the Sturbridge Defendants cite *Sena v. Commonwealth*,

9

629 N.E.2d 986 (Mass. 1994), in which the Supreme Judicial Court held "that the conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate, are discretionary functions and therefore fall within the exception in § 10(b)." *Id.* at 990.

While the Sturbridge Defendants' argument is facially appealing, *Sena*'s holding, in this court's view, does not immunize the Town and the Sturbridge PD. *Sena* concerned only "the conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate." *Id.* (emphasis added). Here, in contrast, Plaintiffs allege that Saloio actually applied for a criminal complaint based solely on his "hunch" (Compl. ¶¶ 33, 37-38) and, in doing so, may have even "fabricated 'evidence" and "knowingly provided false information to the Courts" (Pls.' Opp.'n to Defs.' Mot. at 3-4), *e.g.*, he included "a summons report referencing pills and marijuana seized as evidence that did not exist" and listed a seizure date on which "EL had no contact, either verbal or physical, with any member of the Sturbridge police" (Compl. ¶ 33). As stated in *Sena*, such conduct by law enforcement officers -- *i.e.*, "selling the magistrate shoddy merchandise without appropriate disclaimers" -- "would likely not be . . . a discretionary activity for purposes of the discretionary functions exception." *Id.* at 990 n.5 (citing *Commonwealth v. Connor*, 467 N.E.2d 1340 (Mass. 1984) (internal quotation marks omitted)). Accordingly, and in light of the nascency of these proceedings, the court deems it prudent to not presently excuse the Town and the Sturbridge PD from negligence liability on the basis of the discretionary function exception. *See also Fiske v. Town of N. Attleborough,* 72 Mass. App. Ct. 1114, 2008 WL 3913994, at *1 (Mass App. Ct. Aug.

27, 2008) (unpublished) (discussing, at *summary judgment*, the following *factual* question of section 10(b) immunity: "whether the defendant police officers 'supplied the clerk magistrate with shoddy merchandise in order to procure a criminal complaint'") (quoting *Sena*, 629 N.E.2d at 990 n.5).

On the other hand, this court believes that the Sturbridge Defendants' claims of section 10(h) immunity can be disposed of in short order. That section bars liability for "any claim based upon the failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law." Mass. Gen. L. ch. 258, § 10(h). Plaintiffs, however, do not appear to be making any such claims here. Indeed, Plaintiffs never even address section 10(h) but, rather, attempt to argue that an exception contained in another immunity provision, *section 10(j)*, somehow applies. That argument is obviously off-base. Nevertheless, the plain language of section 10(h) would not appear to immunize the Town and the Sturbridge PD from Plaintiffs' negligence claims arising from Saloio's including false information in the criminal complaint. Therefore, the court believes, Counts 20 through 23 should survive the section 10(h) hurdle as well.

    2. <u>Pleading Issues</u>

Since the court does not believe that the MTCA immunities apply to the negligence-based claims, it will analyze each such claim with regard to the Sturbridge Defendants' second argument, insufficient pleading. First, the court will recommend that Counts 21 and 22 -- in which Plaintiffs appear to allege that the Town and the Sturbridge PD negligently trained and supervised Saloio -- be dismissed. Not only is

there no mention of training or supervision within the body of the complaint, Plaintiffs do not even address Counts 21 and 22 in their memorandum of law.

Second, however, the court will recommend that Count 23, the negligence claim targeting the Town, and Count 20, the negligent infliction of emotional distress claim targeting the Sturbridge PD, survive. While the complaint could certainly be more precise as to the exact contours of these causes of action, the court believes that these two claims are sufficiently articulated throughout the complaint's factual allegations. (See, *e.g.*, Compl. ¶ 11 (alleging that the Town and the Sturbridge PD acted "by and through Saloio"); ¶¶ 17-19, 27-29, 33-39 (alleging various negligent acts and omissions by Saloio); and ¶¶ 40-42 (alleging various negligent acts by the Sturbridge PD).) In short, because the complaint, albeit barely, contains sufficient "factual content that allows the court to draw the reasonable inference that [the Town and the Sturbridge PD are] liable for the [negligence] alleged," *Iqbal*, 129 S. Ct. at 1940, the court will recommend that the Sturbridge Defendants' motion with respect to Counts 20 and 23 be denied.

### IV. CONCLUSION

For the reasons stated, the court recommends that the Sturbridge Defendants' motion to dismiss be DENIED as to Counts 20 and 23, but ALLOWED as to Counts 17, 18, 19, 21, 22, 24, 25 and 26.[4]

---

[4] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and

DATED: September 11, 2009

      /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.